**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| |
|---|
| GLORIA E. LABANDA, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. |

Civil Action No. 17-3354 (JLL)

**OPINION**

**LINARES**, Chief District Judge.

This matter comes before the Court upon the appeal of Gloria E. Labanda ("Plaintiff") from the final decision of the Commissioner ("Defendant") upholding Administrative Law Judge ("ALJ") Dennis O'Leary's denial of Plaintiff's application for disability insurance benefits ("DIBs") under Title II of the Social Security Act ("the Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions and, for the following reasons, affirms the ALJ's decision.

**I.     BACKGROUND**[1]

On March 28, 2013, Plaintiff filed for DIBs, alleging disability since March 2012 caused by, among other things, bilateral carpal tunnel syndrome and degenerative disc disease of the cervical and lumbar spine. (R. at 22, 24). At the onset of her alleged disability, Plaintiff was 51 years old. (R. at 24). Plaintiff's application for DIBs was denied and she subsequently requested a hearing before ALJ O'Leary. (R. at 22, 90–94). At the hearing, Plaintiff and a vocational expert

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 5.

("VE") both testified. (R. at 22). After considering the medical record and the VE's testimony, the ALJ found at Step Four that Plaintiff could perform her past relevant work as a receptionist and was therefore not disabled. (R. at 33–34). The Appeals Council denied Plaintiff's request for review. (R. at 1–14). Accordingly, Plaintiff filed this appeal of the ALJ's determination.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and "'[i]t is less than a preponderance of the evidence but more than a mere scintilla.'" *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). Additionally, under the Act, disability must be established by objective medical evidence. 42 U.S.C. § 423(d)(5)(A). To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*

Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with

2

the record as a whole; and (5) the specialization of the individual giving the opinion. *See* 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

### III. **THE FIVE STEP PROCESS AND THE ALJ'S DECISION**

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)–(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

3

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In Step Two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In Step Three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step [(Step Five)]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Burnett*, 220 F.3d at 118–19 (formatting and emphasis added).

"The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen*, 482 U.S. at 146 n.5). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

4

The ALJ engaged in the above five-step sequential evaluation and found: at Step One, that Plaintiff has not engaged in substantial gainful activity, (R. at 24); at Step Two, that Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine as well as bilateral carpal tunnel syndrome, (R. at 24); at Step Three, that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, (R. at 26); for the RFC determination, that Plaintiff can perform sedentary work with occasional, but not frequent, fine fingering, (R. at 27); and, at Step Four, that Plaintiff is capable of performing her past relevant work as a receptionist, (R. at 33). For these reasons, the ALJ found Plaintiff not to be disabled. (R. at 33). Plaintiff now challenges the ALJ's Step Three and RFC determinations. (ECF No. 11 ("Pl.'s Br.") at 11–17).

## IV. **DISCUSSION**

### A. Step Three

At Step Three, an impairment qualifies as a listed impairment if it meets all, not merely some, of the specified medical criteria for that listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Listing 1.04 (spinal disorders) includes:

> Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

5

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04.

Plaintiff argues that the ALJ should have found that her impairments satisfied the criteria of listing 1.04 because her MRIs showed degenerative disc disease and herniation that, in combination, sufficiently meet the standard under listing 1.04A.[2] (Pl.'s Br. at 29–30). However, as the ALJ specifically stated, Plaintiff shows "no documented motor, sensory, or reflex deficits or spinal cord compromise as required by medical listing 1.04." (R. at 27). In reaching this conclusion, the ALJ noted that Plaintiff's MRIs and X-rays in the record do not show any nerve root compression. (R. at 29, 384, 390, 391). Moreover, Plaintiff's physical examinations did not show sensory or reflex loss. (R. at 31, 453). Considering nerve root compression and sensory or reflex loss are required under listing 1.04A and neither are present in the record, the Court agrees with the ALJ's conclusion that Plaintiff does not qualify under listing 1.04A. *See Sullivan*, 493 U.S. at 530. Therefore, the Court rejects Plaintiff's argument and upholds the ALJ's Step Three determination.

### B. RFC Determination

The ALJ found that Plaintiff had an RFC of sedentary work with occasional, but not frequent, fine fingering. (R. at 27). Plaintiff attacks the ALJ's RFC determination because it did not account for her limitations regarding her gross hand manipulation and concentration. (Pl.'s

---

[2] Plaintiff does not raise the argument that she qualifies under listings 1.04B or C. (Pl.'s Br. at 26–30). Even if Plaintiff did assert arguments under these listings, such arguments would fail. The Court notes that, for listing 1.04B, there is no diagnosis of spinal arachnoiditis in the record. As for listing 1.04C, Plaintiff is able to take care of herself and is not so impaired as to require an assistive device in order to ambulate effectively, (R. at 32). 20 C.F.R. pt. 404, subpt. P, Appx 1, § 1.00B(2) (defining inability to ambulate effectively as "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held device that limits the functioning of both upper extremities."). Therefore, the Court analyzes Plaintiff's claims only under listing 1.04A.

Br. at 18–26). However, the ALJ's RFC determination need only account for Plaintiff's "credibly established limitations." *See Rutherford v. Barnhart,* 399 F.3d 546, 553–54 (3d Cir. 2005). Here, Plaintiff's "credibly established limitations" include degenerative disc disease of the cervical and lumbar spine, as well as bilateral carpal tunnel syndrome. (R. at 24). The ALJ accounted for Plaintiff's degenerative disc disease by finding her limited to sedentary work, (R. at 27), which is the most accommodating classification under the Commissioner's guidelines. *See* 20 C.F.R. § 404.1567 (classifying work as sedentary, light, medium, heavy, and very heavy). Additionally, the ALJ accounted for Plaintiff's bilateral carpal tunnel syndrome by finding her limited to occasional, but not frequent, fine fingering. (R. at 27).

These findings were consistent with the substantial evidence provided by Plaintiff's treating physicians, who opined that Plaintiff required some limitation of mobility and use of her hands but that her impairments did not support a finding of total debilitation. (R. at 30–32). For Plaintiff's back pain, one treating physician the ALJ relied upon stated that Plaintiff suffered from herniation in her spine and pain throughout her back, legs, and arms, but also noted that her muscle and joint strength were within normal limits. (R. at 30). For carpal tunnel syndrome, the ALJ referred to the conservative nature of Plaintiff's treatment, including only physical therapy and a wrist splint, as an indication that Plaintiff's condition was not of a "debilitating magnitude." (R. at 32). In light of this record, the Court finds that the ALJ accounted for Plaintiff's "credibly established limitations" and provided substantial evidence for his determination.

The ALJ also provided substantial evidence for his decision not to find that Plaintiff's gross manipulation with her hands or her ability to concentrate were restricted by her impairments. (R. at 25–32). The ALJ did not limit Plaintiff's ability to perform gross manipulation with her hands, because he found that Plaintiff's carpal tunnel syndrome was mild, and that she had "good strength

in her hands with no limitations in range of motion, muscle atrophy, muscle weakness, sensory changes or decreased reflexes." (R. at 28, 32). The ALJ based these conclusions on the opinions of Plaintiff's treating physicians, who stated that Plaintiff did not have any decreased grip strength. (R. at 453, 489). In fact, the treating physician who diagnosed Plaintiff with carpal tunnel syndrome stated that Plaintiff's "muscle strength [was] grossly normal." (R. at 496). Similarly, the ALJ did not find that Plaintiff's ability to concentrate was affected in light of his conclusion that she could concentrate with only "mild" limitation. (R. at 25). The ALJ based this conclusion on physical evaluations that tested Plaintiff's concentration, where she performed mostly the same as a person of average ability. (R. at 26, 387–89). This conclusion is consistent with that of the state agency's consultant, who opined that Plaintiff performed well on her cognitive exam. (R. at 72–73). Considering the ALJ accounted for Plaintiff's "credibly established limitations" and provided substantial evidence for his findings, the Court concludes that the ALJ properly rejected any limitations regarding gross manipulation or concentration. Accordingly, the Court upholds the ALJ's RFC determination.

## V. **CONCLUSION**

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

Dated: December 28, 2017

JOSE L. LINARES
Chief Judge, United States District Court